UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.K., individually, and on behalf of E.K., a minor child with a disability, | |
| Plaintiffs, | |
| -against- | |
| The Board of Education of the City School District of the City of New York, the New York City Department of Education, the City of New York, and Chancellor Melissa Aviles-Ramos, in her official capacity, | |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __12/4/2025___

25 Civ. 4986 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Plaintiff, M.K., individually, and on behalf of her granddaughter, E.K., brings this action against Defendants, the Board of Education of the City School District of the City of New York, the New York City Department of Education, the City of New York, and Chancellor Melissa Aviles-Ramos, in her official capacity, alleging that Defendants have denied E.K. a free appropriate education ("FAPE"), in violation of the Individuals with Disabilities Education Improvement Act ("IDEA" or "Act"), 20 U.S.C. § 1400, *et seq.  See generally* Compl., ECF No. 1.  Before the Court is M.K.'s motion for a temporary restraining order and preliminary injunction requiring Defendants to fund on a monthly basis E.K.'s placement at Moonridge Academy ("Moonridge"), a private residential school in Cedar City, Utah, along with "requisite transport for E.K. from New York City to Moonridge," pending the final completion of the administrative review process or until E.K. can be placed in "an alternative residential placement," whichever is earlier.  Mot., ECF No. 10.

For the reasons stated below, the motion is DENIED.

**BACKGROUND**

I.     Factual Background

E.K., a thirteen-year-old girl, struggles with numerous behavioral and mental health problems that have impacted her education and safety.  *See* Compl. ¶¶ 2–4; Mem. at 1, ECF No. 12.  M.K., who is E.K.'s grandmother and legal guardian, states that E.K. has been "diagnosed with Unspecified Trauma- and Stressor-Related Disorder, Conduct Disorder, Unspecified Cannabis-Related Disorder, Attention-Deficit/Hyperactivity Disorder ("ADHD"), Unspecified Depressive Disorder, and Eating Disorder, unspecified."  Compl. ¶¶ 2, 26.  "Due to her severe emotional disabilities—particularly school refusal—E.K. has been out of school since November 2024 and is experiencing ongoing irreparable academic and social-emotional harm."  *Id.* ¶ 4.  She "displays aggression toward peers, teachers, . . . M.K., and her 84-year-old great-grandmother who [also] resides with them."  *Id.* ¶ 3. M.K. is reportedly unable "to control E.K., who routinely violates curfews, refuses school attendance, and roams New York City streets late into the night."  *Id.*

In June 2024, E.K.'s committee on special education ("CSE") met to develop an individualized education program ("IEP") for her.  *See id.* ¶ 84.  Due to E.K.'s history of refusing to attend school, M.K. requested that E.K. be assigned to a residential school, but the CSE assigned her to a day treatment program, which E.K. refused to attend.  *Id.* ¶¶ 84, 90.  In December 2024, E.K.'s CSE reconvened and revised her IEP to recommend placement in a New York State Education Department ("NYSED")-approved residential nonpublic school.  *See id.* ¶ 93; *see also* IEP at 18, ECF No. 11-1.  NYSED's Central-Based Support Team ("CBST"), which assists in matching children to nonpublic schools, provided E.K.'s records to 10 in-state residential schools.  Compl. ¶ 95.  In early January 2025, four of the schools rejected E.K. outright, without asking E.K. to participate in a screening interview, and six later refused to accept E.K. because she would not consent to enroll or

refused to attend a screening interview.  *Id.* ¶¶ 95–96; *see also* Opp. at 18, ECF No. 17.

II.      Procedural History

In March 2025, M.K. filed a due process complaint with the New York City Department of

Education (the "Department") Impartial Hearing Office, claiming, *inter alia*, that the Department was

denying E.K. a FAPE by failing to implement the December 2024 IEP recommending a residential

placement.  *See* Findings of Fact and Decision ("FOFD") at 3, ECF No. 11-2.  A month later, M.K.

amended her complaint to request transportation to and placement at Moonridge because it had

agreed to admit E.K. without an interview.  *See id.*; *see also* Am. Due Process Compl., ECF No. 11-6;

Compl. ¶ 101.

On May 28, 2025, after holding a hearing, Carina Patritti, the Department's impartial hearing

officer ("IHO"), determined, *inter alia*, that the Department denied E.K. a FAPE by failing to

implement the December 2024 IEP and failing to identify a "brick and mortar" location for the IEP to

be put into effect.  FOFD at 15.  Patritti also found, however, that placement at Moonridge would be

inappropriate because (1) the Department disagreed that it could not find an NYSED-approved

placement for E.K.; (2) the Department alleged that M.K. "has been uncooperative in getting [E.K.]

to participate in the required interviews/screenings"; and (3) M.K. had not established that Moonridge

would provide E.K. with the specialized services mandated by her IEP.  *Id.* at 16, 18 n.11.  The IHO

directed the parties to reconvene "as soon as possible, and no later than [five] business days" to

discuss resending E.K.'s application to in-state, and if needed, out-of-state NYSED-approved

residential schools.  *Id.* at 19.  She also ordered the Department to "provide any support needed,

including a social worker and/or transportation, to facilitate [E.K.]'s attendance at [the schools'

admission] interviews."  *Id.*  The IHO further ordered Defendants to "facilitate and discuss with the

recommended residential schools, to the extent possible, to have the schools consider waiving [E.K.'s] interview." *Id.*

M.K. appealed the FOFD to the Office of State Review, where her appeal remains pending. *See* Status Rep. I at 3, ECF. No. 23; Status Rep. II at 1–2, ECF No. 32.

M.K. requests a preliminary injunction directing Defendants to fund E.K.'s temporary placement at Moonridge pending the outcome of the administrative appeal. *See* Compl. at 25 ¶ (a); *see also* Mem. M.K. argues that her motion does not "ask the Court to order [the Department] to *place* E.K. at Moonridge;" instead, M.K. purports that she "will place her there if the Court orders the [Department] to pay the cost of Moonridge's tuition." *See* Pl. Ltr. at 2, ECF No. 31. According to M.K., E.K.'s urgent and unaddressed emotional and educational needs, combined with the "significant appeal backlogs" at the OSR, justify the entry of immediate, preliminary relief. Compl. ¶ 19.

The Court held a hearing on M.K.'s motion on June 26, 2025. At the hearing, the Court ordered the Department to, by July 10, identify a "residential school that complies with the December 2024 IEP and that will accept E.K., regardless of her failure to cooperate in the screening and enrollment process." Tr. at 8:13–20, ECF No. 24; *id.* at 8:18–20 ("Such a school may be in or out of state, and the [D]epartment shall facilitate E.K.'s transportation there."). The Court also permitted M.K., by the same date, to supplement the record to show how "Moonridge, or another appropriate placement, would be able to meet E.K.'s specific needs in the event the [D]epartment fails to secure a residential placement for E.K." *Id.* at 8:21–24.

On July 10, the parties filed a joint status report. At that time, contrary to the Court's order, the Department had not identified an in-state or out-of-state residential placement for E.K. *Id.* at 2. The Department reported that it was in the process of arranging interviews for E.K. at NYSED-

approved residential programs, but it acknowledged that E.K. "has refused interviews in the past." *Id.* at 5. The Department claimed that these programs "require student participation and consent as they consider themselves voluntary placements" and, therefore, the Department "legitimately cannot facilitate any private program to waive its interview requirement." *Id.* (emphasis in original). Also on July 10, M.K. filed a supplemental declaration of Craig Rodabough, the clinical director at Moonridge, in support of M.K.'s motion for a preliminary injunction. Rodabough Supp. Decl., ECF No. 23-1.

On July 21 and 22, and August 18, the parties submitted further status updates regarding E.K.'s interim placement. *See* Def. Ltr., ECF No. 30; Pl. Ltr.; Status Rep. II; *see also* ECF No. 29 (order directing supplemental submissions).

According to Defendants, since the IHO's decision, the Department has sent E.K.'s records to 12 NYSED-approved nonpublic residential programs, four of which have offered to schedule virtual (in lieu of in-person) interviews, and two of which have already rejected E.K. Def. Ltr. at 1. The Department has also designated at least two social workers to work with M.K. to assist with E.K.'s participation in the virtual screening interviews. *Id.* Defendants state, however, that E.K. "refuse[s] to cooperate" with the social workers. *Id.* Defendants have also sent E.K.'s application to five out-of-state schools, and although four of the schools have declined E.K.'s application, the Judge Rotenberg Educational Center in Canton, Massachusetts, is actively considering E.K.'s case. *See* Status Rep. II at 2.

M.K. maintains that "a school like Moonridge" is "fully equipped to meet E.K.'s educational and social-emotional needs" and her "IEP requisites." Pl. Ltr. at 1. M.K. claims that she can provide Moonridge with E.K.'s updated behavior assessment, including an assessment from Dr. Zinoviy Gutkovich, a psychologist who previously evaluated her. *Id.* at 1–2; *see also* Gutkovich Decl., ECF

No. 11-5.  M.K. acknowledges, however, that Moonridge "cannot actually develop a program for E.K. without access to her."  Pl. Ltr. at 1.  M.K. continues to seek "prospective payment of E.K.['s] tuition upon enrollment" at Moonridge.  *See* Pl. Ltr. at 4.

## DISCUSSION

I. <u>Legal Standard</u>

The IDEA requires states to provide disabled students with a FAPE through the age of 21.  *See* 20 U.S.C. § 1412(a)(1)(A).  IEPs facilitate the provision of FAPEs by identifying the individualized needs of each disabled child within a school district.  *See W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 133 (2d Cir. 2019).  When there is a dispute regarding a child's IEP, a parent[1] can pursue "at least three options under the IDEA."  *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 534 (2d Cir. 2020).

First, the parent can invoke the "stay-put" provision of the IDEA such that the child remains in her "then-current educational placement" pending the resolution of administrative proceedings, unless the school district and parents agree otherwise.  20 U.S.C. § 1415(j).  When a parent seeks relief under the stay-put provision, the IDEA displaces the standard for a preliminary injunction.  *See id.*  The stay-put provision requires the Department to find the type of general educational program that was last agreed upon by the parties.  *See T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009).  Parents "seeking to invoke the stay-put provision of the IDEA need not exhaust their administrative remedies."  *Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 384 (N.D.N.Y. 2001).

---

[1] "The IDEA defines 'parent' broadly to include, *inter alia*, foster parents, guardians, individuals 'acting in the place of a natural or adoptive parent . . . with whom the child lives,' and, even more generally, 'individual[s] who [are] legally responsible for the child's welfare.'"  *J.S. v. New York State Dep't of Corr. & Cmty. Supervision*, 76 F.4th 32, 34 (2d Cir. 2023) (citing 20 U.S.C. § 1401(23)).

Second, "[t]he parent can determine that the agreed-upon educational program would be better provided somewhere else and thus seek to persuade the school district to pay for the program's new services on a pendency basis." *Ventura de Paulino*, 959 F.3d at 534.

Third, "[p]arents can . . . unilaterally change their child's placement during the pendency of review proceedings . . . but they do so at their own financial risk." *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (cleaned up) (citations omitted). After unilaterally enrolling the child in a new school, parents can seek retroactive reimbursement from the school district if they prevail on their administrative complaint, or if the school district impliedly agrees to the placement when it does not appeal from an IHO or state review officer's pendency order finding the placement to be appropriate. *Ventura de Paulino*, 959 F.3d at 534; *Mendez*, 65 F.4th at 59. What parents "cannot do" is "determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis." *Ventura de Paulino*, 959 F.3d at 534.

II.    Stay-Put Provision

M.K. argues that E.K. is entitled to placement at Moonridge under the stay-put provision because it is the only placement that she has "expressed willingness to accept and serve E.K. in accordance with her IEP requirements." Mem. at 2, 8.

A.  Moonridge

First, E.K. is not entitled to pendency placement at Moonridge. The December 2024 IEP states that E.K.'s pendency placement is an "NYSED-[a]pproved [n]on [p]ublic [s]chool – [r]esidential." IEP at 18; *see also* Tr. 7:25–8:6, ECF No. 24; Order at 2–3, ECF No. 29. The parties do not dispute that Moonridge has not been approved by the NYSED. *See* Opp. at 16; Reply at 3. M.K. has submitted documentation regarding the services and educational curriculum at Moonridge and the extent to which

those services and curriculum can be tailored to E.K.'s individualized needs. *See, e.g.*, ECF Nos. 11-10, 11-11, 23-1, 26-1, 31-1–31-3. It is not enough, however, that Moonridge is "substantially similar" to the pendency placement where, as here, M.K. seeks to unilaterally place E.K. there without Defendants' approval. *Ventura de Paulin*, 959 F.3d at 535; *see also* Opp. at 9 (noting that the parties have not agreed to a non-NYSED-approved school); Reply at 3. To be sure, placement refers "only to the general type of educational program in which the child is placed," *Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980), that is, "the classes, individualized attention and additional services a child will receive— rather than the 'bricks and mortar' of the specific school," *T.Y.*, 584 F.3d at 419. But E.K. is not entitled to placement at a specific school, much less a non-approved school. *See T.Y.*, 584 F.3d at 420; *see also Ventura de Paulino*, 959 F.3d at 532 (holding that the pendency placement is the "only educational program the school district is obligated to pay for during the pendency of an IEP dispute"); *Antkowiak by Antkowiak v. Ambach*, 838 F.2d 635, 640 (2d Cir. 1988) (holding that "the district court had no authority" to order placement at an unapproved school); *Z.H. v. New York City Dep't of Educ.*, 107 F. Supp. 3d 369, 376 (S.D.N.Y. 2015) ("The fact that a school district may consider placement in a private school does not mean that it may place the student at any private school, including one that does not meet the Commissioner's approval standards."); FOFD at 17 ("[E]ven if I did grant relief in the form of prospective placement, I would only be limited in ordering the DOE to place the student in an approved school by the Commission of Education, not at a non-approved private school as requested by Grandparent.").

Second, M.K. is not entitled to pendency funding at Moonridge under the stay-put provision because she seeks to unilaterally place E.K. at Moonridge "if the Court orders the [Department] to pay the cost of Moonridge's tuition." *See* Pl. Ltr. at 2. The Second Circuit has held that parents

cannot unilaterally place a child and then invoke the stay-put provision to force the school district to pay for it. *Ventura de Paulino*, 959 F.3d at 534.

Accordingly, E.K. is not entitled to pendency placement and funding at Moonridge under the stay-put provision, and M.K.'s motion is DENIED.

> ### B. NYSED-approved Nonpublic Residential School

Although E.K. is not entitled to placement at Moonridge, she is still entitled to a pendency placement at public expense in accordance with the December 2024 IEP, and Defendants have yet to identify that placement. M.K. has not proposed a pendency placement other than Moonridge, and the parties do not dispute that E.K. has not participated in the prescreening interviews required by the NYSED-approved nonpublic residential schools where the Department has sent E.K.'s application. Mem. at 1–2; Opp. at 18. The Court remains sympathetic to E.K.'s behavioral challenges and has ordered Defendants to accommodate E.K.'s behavioral limitations in effectuating her placement, regardless of her inability to participate in the interview process. *See* Tr. 8:13-20, ECF No. 24; Order at 5, ECF No. 29. Defendants claim that they continue to seek a school that will accept her. *See* Status Rep. II (noting in the most recent status update that the Judge Rotenberg Educational Center is actively considering E.K.'s case).

Outside of the procedural safeguards of the stay-put provision, Defendants maintain a "preexisting and independent authority to determine *how* to provide the most-recently-agreed-upon educational program." *Ventura de Paulino*, 959 F.3d at 534 (emphasis in original). Therefore, "[i]t is up to the school district to decide how to provide that educational program, at least as long as the decision is made in good faith." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014). Defendants maintain the authority to determine how to provide E.K. with her most-recently-agreed-upon educational program, and relatedly, how to ensure E.K.'s participation in

interviews.  Defendants are, once again, reminded, however, that they remain obligated to identify and fund E.K.'s pendency placement.  *See* 20 U.S.C. § 1415(j).  Without a pendency placement, E.K. continues to be denied a FAPE.

### III.    IDEA § 1415(i) Equitable Relief

As an alternative to a request for a pendency placement at Moonridge, M.K. asks the Court "fund E.K.'s placement pursuant to its equitable authority under 20 U.S.C.§ 1415(i)(2)(C)(iii)."  Mem. at 9; *see also* Pl. Ltr. at 2.  Defendants argue that such relief is not available because M.K. has not exhausted her administrative remedies, i.e., her appeal of the IHO's decision is pending.  *See* Opp. at 13–14.  To the extent that M.K. seeks to unilaterally place E.K. at Moonridge as "self-help to find a residential program that [is] willing to accept E.K.," Reply at 3, M.K. may do so, but her unilateral placement would be done at her "own financial risk."  *Mendez*, 65 F.4th at 59; *see also* Opp. 17–19. M.K. states that she "cannot afford to pay for E.K.'s unilateral placement at Moonridge and E.K. will have no educational placement without prospective funding."  Mem. at 2.

"The IDEA promises a free appropriate education to disabled children without regard to their families' financial status."  *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 452 (2d Cir. 2014). The authority to grant reimbursement and direct payment with a parent's unilateral placement of a child falls under the Court's "discretionary, equitable consideration" pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii).  *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 371 (2d Cir. 2006); *E.M.*, 758 F.3d at 453.

### A.  Direct and Retroactive Funding

"Where . . . parents lack the financial resources to 'front' the costs of private school tuition, and in the rare instance where a private school is willing to enroll the student and take the risk that the parents will not be able to pay tuition costs—or will take years to do so—parents who satisfy the

*Burlington* factors have a right to retroactive direct tuition payment relief." *Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ.*, 769 F.Supp.2d 403, 428 (S.D.N.Y.2011) (citing *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 374 (1985)); *see also E.M.*, 758 F.3d at 453 ("[W]here the equities call for it, direct payment fits comfortably within the *Burlington–Carter* framework.").

Under the *Burlington-Carter* test, a parent can receive direct payment or retroactive reimbursement from the school district "*after* the IEP dispute is resolved" if they can show that: "'(1) the school district's proposed placement violated the IDEA' by, for example, denying a FAPE to the student because the IEP was inadequate; (2) 'the parents' alternative private placement was appropriate'; and (3) 'equitable considerations favor reimbursement.'" *Ventura de Paulino*, 959 F.3d at 526–27 (quoting *T.M. ex rel A.M.*, 752 F.3d at 152); *see also Mr. & Mrs. A. ex rel. D.A.*, 769 F. Supp. 2d at 415 (S.D.N.Y. 2011) ("In *Burlington*, the Court noted that an award of prospective relief was authorized by then Section 1415(e)(2) of IDEA, and that a request for such relief would be subject to the same analysis applicable to a reimbursement request." (emphasis omitted)).

Here, to the extent M.K. seeks unilateral placement of E.K. at Moonridge and direct payment of E.K.'s tuition outside of the stay-put provision, her claim has not yet been administratively exhausted. *See Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203 (2d Cir. 2007) (holding that administrative exhaustion requires a final, unappealed IHO decision, or final state review officer decision). M.K. has not argued or made a showing that administrative exhaustion should be excused here because it would be futile, because the Department "has adopted a policy or pursued a practice of general applicability that is contrary to the law;" or because "it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Cent. Sch. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) ("The burden of proving the applicability of one of these exceptions falls on the party seeking to avoid exhaustion."). Therefore, the IEP dispute has

not yet been resolved, and M.K.'s failure to exhaust administrative remedies "is a jurisdictional prerequisite" of the IDEA that deprives this Court of subject matter jurisdiction over IDEA claims outside of the stay-put provision. *Ventura de Paulino*, 959 F.3d at 530 n.44.

M.K. explicitly states that she "do[es] not seek this Court's determination that Moonridge constitutes an appropriate residential placement satisfying *Burlington* requirements." Mem. at 11. Instead, M.K. "only seek[s] an order directing Defendants to maintain E.K.'s interim placement at Moonridge" because "Moonridge can implement E.K.'s last agreed upon IEP." *Id.* at 11–12. But, for the reasons provided above, the Court cannot find that Moonridge can implement E.K.'s last agreed-upon IEP because Moonridge is not NYSED-approved. *See also Antkowiak*, 838 F.2d at 640 (holding that "the district court [has] no authority" to direct placement in a non-approved private school); *Z.H.*, 107 F. Supp. 3d at 375.

### B. Prospective Funding

Prospective relief is "disfavored as a matter of law" and requires administrative exhaustion. *See VW v. New York City Dep't of Educ.*, No. 21 Civ. 6317, 2022 WL 3448096, at *7 (S.D.N.Y. Aug. 17, 2022) (citing *Eley v. D.C.*, No. 11 Civ. 309, 2012 WL 3656471, at *11 (D.D.C. Aug. 24, 2012) ("The issue of prospective placement generally arises . . . only after the IEP has been properly completed and the parent wishes to remove the student from the IEP's recommended location.")). Prospective placement may be appropriate, however, in certain circumstances, such as: (1) where parents reject a proposed IEP, unilaterally enroll their child in private school, the school district failed to provide a FAPE, the proposed placement is appropriate, and the equities warrant reimbursement; (2) where the proposed private placement was proper and an IEP calling for public school was inappropriate; and (3) where the court has ordered a school district to provide the student with

compensatory education in private school.[2] *See S.A. ex rel. M.A.K. v. New York City Dep't of Educ.*, No. 12 Civ. 435, 2014 WL 1311761, at *7 (E.D.N.Y. Mar. 30, 2014) (collecting cases). Although the Court remains concerned that E.K. has been denied a FAPE, none of those circumstances apply here. Because Moonridge is an unapproved school, the Court cannot find that it is an appropriate placement for E.K. That fact distinguishes this case from *L.G. v. New York City Dep't of Educ.*, No. 23 Civ. 9268, 2023 WL 8044937, at *4 (S.D.N.Y. Nov. 3, 2023), where the plaintiffs were awarded prospective relief because they could show that the Department had previously been ordered to fund a placement at the requested school pursuant to the IDEA. Accordingly, M.K.'s request for prospective funding is DENIED.

## CONCLUSION

For the foregoing reasons, M.K.'s motion is DENIED without prejudice.

By **December 18, 2025,** the parties shall confer and submit a letter update to the Court detailing whether:

1.  The Judge Rotenberg Educational Center in Canton, Massachusetts, has accepted E.K.;

2.  Defendants have submitted E.K.'s application to other out-of-state schools;

3.  The parties can agree on an NYSED-approved nonpublic residential school that can serve as E.K.'s pendency placement, and whether that school can accommodate E.K. regardless of her ability to participate in the prescreening process; and

4.  M.K. proposes an alternative pendency placement for the Court's consideration under the stay-put provision that complies with E.K.'s December 2024 IEP.

---

[2] M.K. does not seek compensatory education, which would require the Department to fund placement at a school as a remedy for any earlier deprivations in E.K.'s education, in her motion.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 10.

SO ORDERED.

Dated:  December 4, 2025
      New York, New York

_____
ANALISA TORRES
United States District Judge